# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

**SEALED**

| | |
|---|---|
| United States of America<br>v.<br>TY'RAY ANQUAN WILSON (-01)<br>DUNCAN HARMON (-02)<br><br>*Defendant(s)* | Case No.<br><br>1:25-mj-00724-MG |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 21, 2025-August 1, 2025 in the county of Delaware in the Southern District of Indiana, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 and 18 U.S.C. § 2 | Distribution of Controlled Substances and Aiding and Abetting |
| 21 U.S.C. § 841 and 18 U.S.C. § 2 | Distribution of Controlled Substances and Aiding and Abetting |
| 18 U.S.C. § 924(c) | Use or Carry of a Firearm During and in Relation to a Drug Trafficking Crime |
| 18 U.S.C. § 924(c) | Use or Carry of a Firearm During and in Relation to a Drug Trafficking Crime |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

/s/ Dillon Holm
*Complainant's signature*

SA Dillon Holm, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by telephone *(reliable electronic means)*

Date: 8/5/2025

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

City and state: Indianapolis, Indiana

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Dillon Holm, Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states:

### AFFIANT BACKGROUND AND PURPOSE OF AFFIDAVIT

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am also an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been employed by the FBI since 2021. I am currently assigned to the FBI Indianapolis District Office, Muncie Resident Agency, and have been so assigned since April 2022. In connection with my official FBI duties, I investigate criminal violations of federal public corruption and drug trafficking laws, including, but not limited to, Title 21, United States Code, Sections 841, 846 and 848, as well as Title 18, United States Code, Section 1030. I have received special training in the enforcement of laws concerning public corruption and controlled substances as found in Titles 18 and 21 of the United States Code. I have been involved in various types of electronic surveillance and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and

1

the laundering and concealing of proceeds from drug trafficking, in violation of Title 18, United States Code Sections, 1956 and 1957. I have received training in investigations involving the interception of wire and electronic communications. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances and their use of telephones and code language to conduct their transactions.

3. I have personally conducted and assisted in numerous criminal investigations involving allegations of public corruption. I have reviewed numerous investigative reports and interviews related to the possession, manufacture, and delivery of, including possession with the intent to deliver, controlled substances. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances and their use of telephones and code language to conduct their transactions. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to, visual surveillance, the general questioning of witnesses, the use of informants, and the use of pen registers. I have participated in the execution of numerous search warrants relating to illegal drug trafficking.

4. I have participated in investigations involving the manufacturing, trafficking, and distribution of illegal drugs. As an FBI Special Agent, I have utilized, and am therefore familiar with, the following investigative techniques: consensual and court-ordered electronic surveillance; physical surveillance; pole

or other covert camera surveillance; trash covers; the development and operation of informants; the execution of search warrants; consent searches; and Global Positioning Systems.

5. **Sources of Information.** The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, surveillance transmission, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PURPOSE OF THIS AFFIDAVIT

6. This affidavit is being submitted in support of a criminal Complaint, as the facts herein demonstrate probable cause that:

   a. Count 1: Between July 21, 2025 and July 26, 2025, Ty'Ray Anquan WILSON (DOB: XX-XX-1995) and Duncan HARMON (DOB XX-XX-1997), engaged in Distribution of a Mixture or Substance Containing Cocaine, in violation of 21 U.S.C. §841(a)(1), (b)(1)(C) and 18 U.S.C. § 2.

   b. Count 2: Between July 28, 2025 and August 2, 2025, Ty'Ray Anquan WILSON and Duncan Harmon, engaged in Distribution of a Mixture or Substance Containing Cocaine, in violation of 21 U.S.C. §841(a)(1), (b)(1)(C) and 18 U.S.C. § 2.

   c. Count 3: Between July 21, 2025 and July 26, 2025, Ty'Ray Anquan WILSON did commit Use or Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c).

d. Count 4: Between July 28, 2025 and August 2, 2025, Duncan HARMON did commit Use or Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c).

## SUMMARY OF THE INVESTIGATION

7. As set forth below, the Federal Bureau of Investigation (FBI), in coordination with the Muncie Delaware County Drug Task Force (MDCDTF) and the Drug Enforcement Administration (DEA), began an investigation of WILSON.

8. During this investigation, controlled drug transactions were conducted under the direction of federal and local law enforcement officers. The controlled drug transactions were conducted in the following manner, unless otherwise specified. The cooperating human source (CHS) purchasing the drugs and making the payment was searched for drugs and money before the controlled transaction. A body recorder and/or electronic transmitter was then provided to the CHS, and the CHS was provided with official authorized funds. The CHS was given instructions by law enforcement personnel to buy drugs from WILSON or make a payment to WILSON. Law enforcement personnel maintained constant audio and/or visual surveillance, to the extent practicable, of the cooperating informant during the transactions. Upon completion of the transaction, the CHS was promptly met by law enforcement personnel, who again searched the informant and secured any purchased substance(s). All purchased substance(s) were field-tested and/or have been or will be submitted to a federal, state, or local laboratory for analysis.

## BASIS OF INFORMATION

9. Except as otherwise noted, the information set forth in this Affidavit has been provided to me by FBI Task Force Officers (TFO), or other law enforcement agents or officers. Unless otherwise noted, whenever in this Affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had direct contact via surveillance transmission) regarding the events described in this Affidavit. Information obtained during the course of this investigation was largely the product of cooperative efforts with CHS reporting and tasking. Likewise, information resulting from physical surveillance, except where otherwise indicated, does not necessarily set forth my observation, but rather has been provided directly or indirectly through other FBI Agents, FBI TFOs, Muncie Delaware County Drug Task Force officers, or other law enforcement officers who conducted the surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects, and record checks has been obtained through the IDACS or NCIC computers.

10. All subscriber, toll record, pen register and trap and trace information contained herein was obtained by court order or subpoena.

## PROBABLE CAUSE

11. At the beginning of July 2025 and other times, the investigators met with a CHS who provided them information regarding WILSON. The CHS stated the CHS has known WILSON for between two to five years (the exact amount of time known to law enforcement but left out of this affidavit to protect the identity

of the CHS). When the CHS first met WILSON, the CHS saw WILSON use cocaine in a public place. On at least one occasion, the CHS used cocaine with WILSON. At another time, the CHS had contact with WILSON's brother at least once, and WILSON's brother indicated WILSON "had cocaine," which the CHS understood to mean cocaine available for distribution. On another occasion, the CHS saw WILSON in possession of suspected methamphetamine.

12. The CHS has no felony convictions and is cooperating for monetary gain. This affiant believes that the information provided by the CHS is reliable for the following reasons:

    a. The CHS admitted using cocaine, which is a statement against penal interest.

    b. Information from the CHS has been largely corroborated by independent police investigation, law enforcement databases, and surveillance. At no time has the CHS provided information to investigators that law enforcement has determined to be false.

    c. Additionally, the CHS successfully conducted two (2) controlled purchases of cocaine from WILSON.

13. WILSON is a sworn law enforcement officer employed by the Anderson Police Department, in Anderson, Indiana, and has been so employed since November 2018.

14. During the week of July 21, 2025, the CHS conducted a controlled purchase of cocaine from WILSON. WILSON communicated with the CHS via telephone number (765) 559-5984.

15. More specifically, after meeting with law enforcement officers and being outfitted with a recording device and official funds, the CHS traveled to 3008 Sheridan Street, Anderson, Indiana, within the Southern District of Indiana. Surveillance observed WILSON in the detached garage of the residence.

16. When the CHS arrived at 3008 Sheridan Street, the CHS entered the garage and made contact with WILSON. Later, surveillance observed the CHS and WILSON exit the garage, enter a black Dodge Rebel truck, In God We Trust plate TK133OWV, and leave 3008 Sheridan Street. At the time WILSON and the CHS left the residence, WILSON's police vehicle, police plate 20747, was in the driveway. Anderson Police Department records show police plate 20747 assigned to WILSON.

17. Investigators maintained constant surveillance of the truck. Later, investigators observed WILSON pick up a white male, later identified as Duncan HARMON at 2 Dennis Drive in Markleville, Indiana, 46056. After one stop, and having picked up no additional people, WILSON, HARMON, and the CHS traveled back to 3008 Sheridan Street. Surveillance observed WILSON, Harmon, and the CHS enter the garage.

18. A little over an hour later, the CHS left the detached garage and traveled back to the predetermined meeting location. The CHS stated WILSON coordinated getting the cocaine from Harmon for the CHS, but Harmon did not have the cocaine on him at that time. The CHS provided United States currency to HARMON (the exact amount known to law enforcement). WILSON told the CHS to return later to pick up the cocaine.

19. After the CHS left, surveillance observed Harmon exit the garage and move WILSON's police vehicle across the street. Harmon then entered the garage at Sheridan Street again, and Harmon and WILSON remained inside.

20. Approximately 2 hours later, the CHS attempted to call WILSON on telephone number (765) 559-5984, but he did not respond. Law enforcement had the CHS return to 3008 Sheridan Street. HARMON and WILSON were still at 3008 Sheridan Street. Surveillance saw WILSON talking with a Black female in the driveway, and HARMON was in the garage. The CHS entered the garage and exited approximately fifteen minutes later. The CHS returned to the predetermined meeting location, where the CHS provided law enforcement with a plastic baggie containing a white powdery substance that tested presumptively positive for cocaine.

21. The CHS stated the CHS arrived at Sheridan Street where WILSON told the CHS to go in the garage. The CHS entered the garage, and HARMON provided the CHS with the cocaine.

22. Your affiant reviewed the buy recording, and it corroborated what the CHS recounted to investigators. Your affiant observed on the table, in front of where WILSON was sitting in the garage, a semi-automatic handgun, consistent with a Glock, and two phones (a phone with a pink case and a white phone). Your affiant observed the firearm on the table when the CHS first entered the garage. During the video, your affiant observed WILSON use both the pink cased phone and the white phone. Additionally, WILSON was not on duty during this controlled buy. When WILSON and the CHS went to leave to

8

pick up HARMON, WILSON grabbed the handgun from the table and placed it in his pocket. WILSON did not exit the truck again until WILSON, HARMON, and the CHS arrived back at Sheridan Street. WILSON and the CHS then entered the Dodge Rebel truck. Later, when the CHS arrived back in the garage to obtain cocaine from HARMON, your affiant observed a semi-automatic handgun, chrome with black handle, on the table in front of HARMON, along with a cellular phone in a black case. In your affiant's training and experience, multiple phones and firearms are tools of the drug trade.

23. During the week of July 28, 2025, the CHS conducted a separate controlled purchase cocaine from WILSON.

24. More specifically, after meeting with law enforcement officers and being outfitted with a recording device and official funds, the CHS traveled to 3008 Sheridan Street. The Dodge Rebel truck, In God We Trust plate TK133OWV, was present in the driveway.

25. While at the residence, the CHS asked for WILSON's help in procuring additional drugs from HARMON. WILSON's initial attempts to contact Harmon were unsuccessful but, based on the conversation between WILSON and the CHS, the CHS knew the CHS could return later to obtain the cocaine from HARMON. The CHS provided U.S. currency to WILSON for the cocaine. The CHS then left 3008 Sheridan Street.

26. Several hours later, the CHS received a text message from telephone number (765) 274-8089 where HARMON identified himself as "Duncan." The CHS confirmed with HARMON that WILSON had provided HARMON with the

money the CHS had given WILSON. HARMON confirmed.

27. Shortly after the texts, surveillance observed HARMON leave 2 Dennis Drive, Markleville, Indiana, on a white motorcycle. Surveillance had previously spotted WILSON driving to that same residence to retrieve HARMON during the controlled buy that occurred the week of July 21, 2025. A check of Indiana BMV records shows a 2008 White Dodge Ram (LP: TK280OVD) is registered to HARMON at 2 Dennis Drive.

28. Less than 30 minutes after HARMON left Dennis Drive on the motorcycle, he arrived at 3008 Sheridan Street. Inside the garage, HARMON provided the CHS with a white powdery substance suspected to be cocaine. Based on the investigation, your affiant believes WILSON was inside Sheridan Street when HARMON provided the cocaine to the CHS. Surveillance did not observe WILSON leave the residence between when the CHS initially left and when the CHS was provided cocaine by HARMON.

29. Your affiant reviewed the buy recording and observed a chrome with black handle handgun in a holster on HARMON's right hip at the time the transaction occurred. The handgun's appearance was consistent with the handgun present on the table at the time HARMON handed over the cocaine to the CHS during the week of July 21, 2025.

30. Based on my training, experience, and knowledge of this investigation, I know that drug traffickers routinely use firearms as a means of protection to facilitate their drug trafficking activities. Harmon had his respective firearm either on his person or within reach on both transactions set forth above.

The presence of firearm(s) during drug transactions drastically increases the risk of injury and/or death, presenting a clear danger to the community in which these transactions take place.

## CONCLUSION

31. Based on my training and experience, and the facts set forth herein, I respectfully submit that there is probable cause to believe that on at least two separate occasions in July 2025, WILSON and HARMON committed distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and WILSON and HARMON used or carried a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

32. Accordingly, I request the Court issue a criminal complaint charging WILSON with the offense set forth above and issue a warrant for his arrest.

/s/ Dillon Holm
Dillon Holm, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Federal Rules of Criminal Procedure 4.1 and 41(d)(3) by telephone.

8/5/2025



Mario Garcia
United States Magistrate Judge
Southern District of Indiana